UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re James M. Lyle,                             Case No. 07-41933
                                                 Chapter 13
               Debtor.                   Hon. Marci B. McIvor
_____/

## OPINION DENYING DEBTOR'S MOTION TO FIND FORD MOTOR COMPANY AND FIDELITY INVESTMENTS IN CONTEMPT OF COURT FOR VIOLATING THE ORDER CONFIRMING PLAN AND FOR ATTORNEY FEES AND COSTS

This matter is before the Court on debtor James M. Lyle's Motion to Find Ford Motor Company ("Ford") and Fidelity Investments ("Fidelity") in Contempt of Court for Violating the Order Confirming Plan and for Attorney Fees and Costs. Debtor's confirmed Plan modifies the terms on which Debtor was required by loan documents to repay loans from a retirement plan. Ford is the retirement plan's sponsor. Fidelity is the retirement plan's administrator. Specifically, Debtor's Motion seeks the following relief: (1) payment of $1,000 in attorney fees incurred in bringing the present motion; (2) an order precluding Ford and Fidelity from issuing a notice of default or distribution to the Internal Revenue Service, (3) an order requiring Ford and Fidelity to retract the notice already issued to the Internal Revenue Service regarding default or distribution, and (4) an order requiring Ford and/or Fidelity to accept loan payments from the Chapter 13 Trustee, and apply the payments pursuant to the terms of Debtor's confirmed chapter 13 Plan.

The Court held a hearing on Debtor's Motion on April 3, 2007, and the matter was taken under advisement. Because the Court finds that Ford did not have notice of the bankruptcy filing, Debtor's proposed Plan, or the Order Confirming Debtor's Plan,

Ford cannot be held in contempt for violating the Order Confirming Plan. Therefore, Debtor's request for attorney's fees is denied. The Court also finds that as the administrator of the retirement plan, Fidelity acts at the direction of the retirement plan's sponsor, Ford. The Court therefore denies Debtor's Motion as to Fidelity in its entirety. The Court further finds that it cannot resolve the remaining issues as to Ford without additional briefs from the parties.

## Facts

Debtor filed a voluntary chapter 13 bankruptcy petition on January 31, 2007. Debtor's schedule D (secured claims) disclosed a $6,051.04 borrowed against a tax qualified retirement savings plan.[1] According to Ford's Brief in Opposition to the present Motion, the amount listed for the loan on Debtor's schedule represents the aggregate outstanding balance of three loans taken out by Debtor from a Tax-Efficient Savings Plan for Hourly Employees sponsored by Ford Motor Company: (1) an $8,000 loan taken on January 1, 2005, to be repaid in weekly installments through payroll deduction over a three year term (loan due January 4, 2008) with interest at 5.25%; (2) a $2,000 loan taken July 5, 2006, to be repaid in weekly installments through payroll deduction over a one year term (loan due July 6, 2007) with interest at 8.25%; and (3) a $2,000 loan taken January 23, 2007, to be repaid in weekly installments through payroll deduction over a two year term (loan due January

---

[1] The exact nature of the plan and its specific terms have not been provided to the Court.

23, 2009), with interest at 8.25%.[2] Fidelity provides administrative record-keeping services for the retirement plan. While neither Ford nor Fidelity is a creditor, as that term is defined by the bankruptcy code (11 U.S.C. § 101(10)), Fidelity is included on Debtor's list of creditors. Ford Motor Company is not included on Debtor's list of creditors.[3]

In response to correspondence received regarding Debtor's bankruptcy, Fidelity sent Debtor a letter dated February 21, 2007 which explained that the loans were subject to both the IRS Code and ERISA:

> Under the provisions of the Plan(s), loan repayments are made through payroll deduction. If repayments on this loan were to be discontinued, Section 72(p) of the Code requires that the outstanding loan balance be deemed a taxable distribution. This would cause you to include the outstanding loan balance and, if applicable, accrued interest in your income for the year in which the default occurs. The taxable amount may also be subject to penalty taxes.
>
> If it is your intention that the loan repayments are to be discontinued, please notify the Plan Sponsor(s). Since loan repayments are made through payroll deduction, the Plan Sponsor(s) will have to discontinue the repayments through its payroll system.

A letter from Fidelity to Debtor dated February 27, 2007 (sent in response to Fidelity's receipt of Debtor's first proposed Plan filed on February 20, 2008) further explained:

---

[2] Ford Motor Company is not Debtor's employer. According to schedule I, Debtor has been employed as an auto worker for 16 years by Auto Alliance International.

[3] In a letter dated February 21, 2007 from Fidelity to Debtor, Fidelity informed Debtor of its roll as the plan's administrator and Ford's role as plan sponsor. The letter expressly stated: "Fidelity is not a creditor. The Plan is the creditor. Fidelity would appreciate your cooperation in updating the records in this case to reflect that Fidelity is not a creditor."

3

> Fidelity records indicate that you are a participant in The Plan, a qualified retirement plan maintained by the Plan Sponsor(s). The Plan is subject to the provisions of the Internal Revenue Code of 1986 ("Code"), as amended, and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. Section 401(a)(13) of the Code and Section 206(d) of ERISA prohibit the assignment or alienation of a participant's benefit under a qualified plan. Your Plan account/benefit is therefore exempt from bankruptcy proceedings and not subject to the claims of your creditors pursuant to applicable U.S. Bankruptcy laws.

In March, 2007, at Debtor's request, Ford discontinued payroll deductions for repayment on Debtor's loans.[4] On April 26, 2007, Debtor filed a first amended chapter 13 Plan, which was served to all parties on Debtor's list of creditors. An Order Confirming Debtor's amended chapter 13 Plan was entered on May 2, 2007. The confirmed Plan treats Debtor's loans as a single loan in the amount of $6,285.64, payable through the trustee over 60 months at an interest rate of 8.25%. It is designated a class 5 "other secured" claim.

Between the time that Ford discontinued deduction of the loan payments from Debtor's paychecks (March, 2007) and the time the Trustee began making payments to Fidelity pursuant to Debtor's confirmed Plan, it appears that no loan payments were made. On May 11, 2007, Fidelity sent Debtor a notice which stated in part:

> Our records indicate that the repayments on the above-referenced loans have not been made in accordance with the terms of your loan agreement. Under the terms of the Plan, your loan will be in default unless payment for the ***Total amount past due* is received prior to the *Due Date of the Amount Past Due* above.**

When a plan loan is declared in default, Internal Revenue Service

---

[4]At oral argument, Debtor's Counsel indicated that she had spoken to (and electronically mailed correspondence to) an attorney for Ford, who agreed to stop the payroll deduction.

4

> regulations require that the outstanding principal balance plus the interest accrued through the date of default, will be treated as having been received as a distribution from the Plan. Therefore, should your loan be defaulted, the unpaid loan balance is considered a taxable event in the year of default and will be reported to the Internal Revenue Service. An IRS Form 1099-R reflecting this loan default will be issued in January of next year. This form should be retained with your tax files.

(Emphasis in original). On May 15, 2007, Fidelity sent Debtor a letter substantively similar to the February 27, 2007 letter, and acknowledging receipt of the Court's Order Confirming Plan.

In a letter from Fidelity to Debtor dated September 27, 2007, Fidelity again explained its roll as Ford's retirement plan administrator (a plan subject to both the Internal Revenue Code and ERISA), and stated in part:

> Based on our records, repayments on your loan were delinquent and the loan was defaulted. As required by Section 72 of the Code and pursuant to the Plan's administrative procedures, the entire outstanding loan balance plus any accrued interest was reported to the Internal Revenue Service as defaulted and became taxable to you. You will receive a Form 1099-R which reports this taxable distribution to you. If you are under age 59 ½ , you may also be subject to the 10% early withdrawal penalty.
>
> Please be advised that participant loans from qualified retirement plans are not considered debts subject to the jurisdiction of the bankruptcy courts and therefore the automatic stay provisions under the Bankruptcy Code do not apply.

In October and November, the Trustee made loan payments to Fidelity pursuant to the terms of the confirmed Plan. Fidelity did not process the payments because, according to the letters sent by Fidelity to Debtor, "[t]here [were] no instructions indicating which loan your payment should be applied to." (Fidelity letter dated October 18, 2007).

5

Debtor filed the present Motion seeking to hold Ford and Fidelity in contempt for issuing a notice of default to the IRS (thereby treating the loan as a distribution from the retirement plan to be reported as taxable income to Debtor) and for refusing to accept the payments made to Fidelity by the Trustee. Debtor seeks an Order: (1) awarding attorney fees incurred in bringing the present Motion, (2) requiring Ford and Fidelity to retract the notice of default sent to the IRS, (3) precluding Ford and Fidelity from sending a default notice to the IRS in the future, and (4) requiring Fidelity and Ford to accept payments from the Trustee pursuant to the terms of the confirmed Plan.

Ford objects to the Motion contending that: (1) it is not bound by the terms of the confirmed Plan because it never received notice of the Plan or Order Confirming Plan, and did not have an opportunity to object, and (2) Debtor's confirmed Plan impermissibly modifies the repayment terms of the loans under Ford's retirement plan.[5] Specifically, Ford contends that the repayment schedule in the confirmed Plan "jeopardiz[es] the tax exempt status of the Qualified Plan for tens of thousands of employees who participate in the Qualified Plan." (Ford's Brief at 2). As explained in Ford's Brief:

> Under the terms of the Qualified Plan consistent with the Internal
> Revenue Code ('IRC') and ERISA, the entire amount of any loan from the
> Qualified Plan must be repaid in full with interest within 60 months after
> the month the loan is obtained. Loans from the Qualified Plan required a
> level amortization with payments not less frequently than quarterly

---

[5] 11 U.S.C. § 1322(f) states that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." Loans described under 11 U.S.C. § 362(b)(19) include loans from a plan under § 408(b) of ERISA and loans subject to § 72(p) of the Internal Revenue Code.

6

throughout the repayment period. Further, the Qualified Plan requires
that repayment of loans from the Qualified Plan must be made by an
employee from his or her wages by payroll deduction. If the employee
fails to pay the loan within 60 months of inception or if there is no
payment for a three month period a default occurs. In the event of a
default, the loan balance plus any accrued interest is treated as a
distribution from the Qualified Plan. The foregoing provisions are
mandatory so as to retain tax benefits of the Qualified Plan.

Ford's Brief at 3.

## Analysis

I.  Ford is not bound by the terms of the confirmed Plan because it never received actual or constructive notice of the Plan.

11 U.S.C. § 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." While the "general effect of this section is to bind creditors to the terms of a debtor's plan by causing all issue that were or that could have been decided to become res judicata", the effect is not absolute. *In re Harris*, 293 B.R. 438, 441 (Bankr. N.D. Ohio 2003)(citations omitted).

> [The] provisions of a confirmed Chapter 13 plan are not binding on creditors to the extent that the confirmation order violates a creditors due process rights. . . For purposes of § 1327(a), due process requires that notice be given to the creditor that is reasonably calculated, under all of the circumstances, to appraise the creditor that its rights as a creditor may be placed in jeopardy.

*Id. See also In re Walsh,* 264 B.R. 482 (Bankr. N.D. Ohio 2001); *Geno Enterprises, Inc. v. Newstar Energy, U.S.A. (In re Newstar Energy of Texas, LLC)*, 280 B.R. 623 626-27 (Bankr. W.D. Mich. 2002)(confirmed chapter 11 plan not binding on party who did not

7

receive copy of amended plan). Whether notice is sufficient to satisfy due process must be considered in the context of a chapter 13 case:

> Things happen quickly in Chapter 13 cases where the confirmation hearing can occur as early as 26 days after the case is filed. *See* Fed. R. Bankr. P. 2002(b). . . With such a compressed time frame and in light of the binding effect of confirmation on the property interests and rights of the parties, bankruptcy courts should be particularly vigilant that the confirmation process is fair and comports with due process requirements. As set forth in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to have a fair opportunity to protect itself against a binding determination that might adversely affect the interests of a party, notice must be reasonably calculated to bring to the party's attention the nature and substance of the pending determination (i.e. the extent of what might happen if they don't act), and it must afford a reasonable time in which to act. By requiring that the debtor's proposed plan be served on all creditors at least 25 days prior to the confirmation hearing, the Federal Rules of Bankruptcy Procedure incorporate due process protections into the Chapter 13 confirmation process.

*In re Duggins*, 263 B.R. 233, 240 (Bankr. C.D. Ill. 2001). *See also In re Walsh*, 264 B.R. 482, 484 (Bankr. N.D. Ohio 2001)("Where a creditor does not have notice of the bankruptcy case. . . the Plan will not be given that binding effect as to that creditor"); *In re Ruehle*, 296 B.R. 146, 165 (Bankr. N.D. Ohio 2003), *aff'd*, 412 F.3d 679 (6th Cir. BAP 2005)("Due process is not to be sliced, diced and disguised with sauce. Due process must be served whole, without garnish").

The Court recognizes that neither Ford nor Fidelity are "creditors" under the Bankruptcy Code. However, Ford is clearly an interested party in that the terms of Debtor's Plan which modify Debtor's loan repayments may adversely impact Ford by subjecting Ford's retirement plan to enforcement action by the IRS or the Pension Benefit Guaranty Administration. Since Ford may well be adversely impacted by

8

Debtor's Plan, Ford cannot be bound by the terms of the Plan unless it had notice of the Plan and the Order Confirming Plan

The parties agree that Ford was not included on Debtor's list of creditors and did not receive actual notice of the bankruptcy proceeding, the proposed Plan, or the Order Confirming Plan. At oral argument, Debtor's Counsel argued that Ford received adequate "constructive" or "inquiry" notice of the bankruptcy by way of her conversations with a Ford lawyer regarding Debtor's payroll deductions. The Court disagrees. Debtor's Counsel's discussions with Ford seeking to discontinue payroll deductions for payments on the retirement account loans may have put Ford on notice that a bankruptcy had been filed and that Debtor was no longer going make payments on the loans by way of payroll deductions, but they did not give Ford notice of the terms of Debtor's proposed Plan. Ford had no reason to believe that the terms of the Debtor's loans against the retirement plan were being altered, or that any action was required by Ford. Without receiving a copy of the proposed Plan, Ford had no way of knowing that the proposed Plan included changes to the loans which were potentially inconsistent with terms of Ford's qualified retirement plan. Ford had no opportunity to object to the proposed Plan and cannot be bound by the terms of the confirmed Plan which affect Ford. Therefore, the Court denies Debtor's Motion to hold Ford and Fidelity in contempt for violating the confirmed Plan, and denies Debtor's request for attorney fees in the amount of $1,000.

II. <u>The Court has insufficient information to determine whether Debtor is entitled to any relief as a result of Ford and Fidelity notifying the IRS of a default.</u>

9

07-41933-mbm    Doc 62    Filed 04/10/08    Entered 04/10/08 12:56:07    Page 9 of 11

Debtor's Motion for Contempt seeks an order precluding Ford and Fidelity from issuing a notice of default or distribution to the IRS. Based on the language in the letters sent from Fidelity to Debtor, the Court is satisfied that the delay in payments to Fidelity as a result of the termination of the payroll deductions, caused a default under the Ford plan. (*See* Fidelity letter dated September 27, 2007). Once a loan is in default, the terms of Ford's plan, the Internal Revenue Code, and ERISA control subsequent events, one of which is the issuance of a 1099-R form. Ford and Fidelity cannot be held in contempt for doing what the law requires them to do. That being said, because the issue was not fully briefed, the Court is uncertain whether, going forward, the Debtor's Plan cures the default, or whether the Debtor's Plan puts Ford at risk of an enforcement action from the IRS because the confirmed Plan proposes payment terms different from the ones permitted by Ford's retirement plan, and possibly, inconsistent with the IRS Code and ERISA. Part of this inquiry also requires the Court to make a determination of whether this provision of Debtor's Plan violates 11 U.S.C. § 1322(f); that is, does Debtor's Plan materially alter the terms of a loan described in 11 U.S.C. § 361(b)(19)?

Because the Court is unable to determine whether Debtor is entitled to any relief, or whether Debtor's Plan violates 11 U.S.C. § 1322(f), the Court requests that the parties file supplemental briefs on the following issues:

> (1) Does Debtor's Plan materially alter the terms of loans described in 11 U.S.C. § 362(b)(19) in violation of 11 U.S.C. § 1322(f)?
>
> (2) Does Debtor's Plan violate provisions of the Internal Revenue Code and ERISA which pertain to such loans;

> (3) Cite the specific provisions of the Internal Revenue Code and ERISA which control loan withdrawals from the relevant qualified retirement or employee benefit plans.

The Court also requests that Debtor provide the Court with copies of the loan documents, and Ford provide the Court with copies of the relevant provisions of its qualified plan. The parties shall file their briefs by April 24, 2008. Upon receipt of the briefs, the Court will issue a ruling as to whether the confirmed Plan comports with the law or whether Debtor is entitled to any relief. Until further order of the Court, the Trustee shall continue to administer the Plan as provided in the Order Confirming Plan, and continue distributing payments to Fidelity.

## Conclusion

For the foregoing reasons, Debtor's Motion for Contempt is DENIED. Consistent with this Opinion, the Parties shall file supplemental briefs no later than April 24, 2008.

**Signed on April 10, 2008**

        **/s/ Marci B. McIvor**
        **Marci B. McIvor**
        **United States Bankruptcy Judge**

11